[No. 62346-5. En Banc. October 19, 1995.]

THE STATE OF WASHINGTON, *Petitioner*, v. DALONA S. MYLES, *Respondent*.

808

*Norm Maleng, Prosecuting Attorney,* and *Gregory E. Jackson, Deputy,* for petitioner.

*Douglas J. Ende;* and *Nielsen & Acosta,* by *Eric J. Nielsen,* for respondent.

MADSEN, J. — Respondent Dalona S. Myles was convicted of unlawful possession of a dangerous weapon in violation of RCW 9.41.250. At issue is the constitutionality of the statute as applied to the facts in this case, and the sufficiency of the evidence supporting Myles' conviction under the statute. The Court of Appeals reversed Myles' conviction on the stated basis that there was insufficient evidence. We reverse the Court of Appeals and affirm the conviction.

## FACTS

Under RCW 9.41.250, a person who furtively carries a dangerous weapon with the intent to conceal is guilty of a gross misdemeanor. The information in this case alleged that on September 1, 1992, Myles "did furtively carry with intent to conceal a dangerous weapon, to wit: a knife . . . ." Count 1, Clerk's Papers at 1.

State's witness, Officer Angela Johnson, testified that on September 1, 1992, she was dispatched to the intersection of 30th Avenue and East Republican in Seattle as a result of a 911 call reporting a fight or disturbance. Upon arrival, Johnson saw Myles, then age sixteen, and two or three other people at a corner of the intersection, and a larger group of five to ten people on the other side of the street. Johnson testified that Myles was yelling threats and swearing at the larger group of people. Johnson got

out of her car, approached Myles, and asked what was going on. Johnson testified that Myles said "I'm going to kick your ass, you . . . bitch." Report of Proceedings at 5. Johnson testified that at the time Myles had her hands in her coat pockets and "appeared to be reaching for something . . . ." Report of Proceedings at 5. Johnson testified she thought it might be a weapon, and testified that as she approached, Myles continued to swear and act aggressive toward Johnson.

Officer Johnson took Myles to the patrol car, and patted her down for weapons by feeling open handed along the outside of her clothing. When she patted down the left side of Myles' coat, she felt "something that was hard" which she thought might be a weapon. Report of Proceedings at 6. The object was a paring knife with a fixed serrated blade. The knife was not found in a pocket into which Myles had put her hands, but instead was found in the left inside pocket behind one of the pockets where Myles' hands were.

The juvenile court found that the knife was a dangerous weapon. The court found Myles guilty of possession of a dangerous weapon in violation of RCW 9.41.250. She was convicted as charged and sentenced to two months of community supervision and eight hours of community service.

Myles appealed, arguing among other things that there was insufficient evidence to support finding of fact 6, and arguing that RCW 9.41.250 is unconstitutionally vague. The Court of Appeals reasoned that the statute would survive a vagueness challenge only if it is construed as requiring an overt movement as an element of the crime, i.e., a "movement to conceal a weapon, done furtively, in a way meant to escape notice." *State v. Myles*, 75 Wn. App. 643, 647, 879 P.2d 968 (1994), *review granted*, 126 Wn.2d 1001 (1995). The court said, however, that because there was insufficient evidence to support the conviction, it was unnecessary to decide the constitutional question. *Myles*, 75 Wn. App. at 647. The court reversed the conviction and

dismissed the charge. The State's petition for review was granted.

## I

Former RCW 9.41.250 provided in part:

> Every person . . . who shall furtively carry with intent to conceal any dagger, dirk, pistol, or other dangerous weapon . . . shall be guilty of a gross misdemeanor.

Laws of 1957, ch. 93, § 1.[1]

Although the Court of Appeals purported to decide this case solely on Myles' sufficiency of the evidence challenge, that court assessed the sufficiency of the evidence based upon its assumption that the statute requires a furtive overt movement in order to survive a vagueness challenge. Thus, the court effectively decided the constitutional question.

■■ The first issue, then, is whether the Court of Appeals erred by construing the applicable provision in RCW 9.41.250 as requiring a furtive overt movement in order to save it from a vagueness challenge.[2] Myles has not referred to the Washington Constitution nor engaged in a *Gunwall* analysis (*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76

---

[1]When Myles was charged and convicted, the statute contained no subsections. A 1994 amendment designated subsections and made minor nonsubstantive changes in the language under which Myles was convicted.

The statute now reads in part:

> Every person who:
>
> . . . .
>
> (2) Furtively carries with intent to conceal any dagger, dirk, pistol, or other dangerous weapon . . .
>
> . . . .
>
> is guilty of a gross misdemeanor . . . .

RCW 9.41.250.

[2]Myles argues only that RCW 9.41.250 is unconstitutional as applied. Unless a statute involves First Amendment rights, a vagueness challenge will only be evaluated in light of how the statute has been applied in a particular case. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992).

A.L.R.4th 517 (1986)). Accordingly, her due process claim will be decided under federal constitutional law. *See Spokane v. Douglass*, 115 Wn.2d 171, 176-77, 795 P.2d 693 (1990).

■■ Under the Fourteenth Amendment's Due Process Clause, a statute is void for vagueness if it "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed" or if it "does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *Douglass*, 115 Wn.2d at 178; *see Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 75 L. Ed. 2d 903 (1983). When assessing a statute under the second prong of the vagueness test, the court examines the terms of the statute to see if they contain adequate standards to guide law enforcement officials. *See, e.g., Tacoma v. Luvene*, 118 Wn.2d 826, 846-47, 827 P.2d 1374 (1992). The question primarily is whether the statute "proscribes conduct by resort to 'inherently subjective terms.' " *Douglass*, 115 Wn.2d at 181 (quoting *State v. Maciolek*, 101 Wn.2d 259, 267, 676 P.2d 996 (1984)). The fact that the statute may require a subjective evaluation by a law enforcement officer does not render the statute unconstitutional; only if the statute invites an inordinate amount of discretion is it unconstitutional. *Douglass*, 115 Wn.2d at 181.

■■ Two principles limit the otherwise broad sweep of the vagueness doctrine. *State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). First is the principle that a statute is presumed to be constitutional and a party challenging its constitutionality bears the burden of proving its unconstitutionality beyond a reasonable doubt. *Halstien*, 122 Wn.2d at 118. Second,

> "impossible standards of specificity" or "mathematical certainty" are not required because some degree of vagueness is inherent in the use of language. [*Seattle v.*] *Eze*, 111 Wn.2d [22,] 26-27[, 759 P.2d 366, 78 A.L.R.4th 1115 (1992)]; *Haley* [*v. Medical Disciplinary Bd.*], 117 Wn.2d [720,] 740[, 818 P.2d 1062 (1991)]. "Consequently, a statute is not unconstitution-

ally vague merely because a person cannot predict with complete certainty the exact point at which his [or her] actions would be classified as prohibited conduct". *Eze*, 111 Wn.2d at 27.

*Halstien*, 122 Wn.2d at 118.

■ RCW 9.41.250 contains a description of both the proscribed criminal conduct and the requisite criminal intent. The forbidden conduct under this statute is the furtive carrying of any dagger, dirk, pistol, or other dangerous weapon.[3] The word "furtively" is an adverb, *Webster's Third New International Dictionary* 924 (1966), which in RCW 9.41.250 modifies "carry," and describes the manner in which the dangerous weapon is carried. "Furtively" means "in a furtive manner." *Webster's* at 924. "Furtive" means "done by stealth : SECRET, SURREPTITIOUS" and "expressive of stealth : SNEAKY, SLY . . . ." *Webster's* at 924. Thus, "furtively carry" means to carry stealthily, secretly, sneakily, or slyly. Although there is no challenge directed to the term "carry," for completeness we note that synonyms are "bear," "convey," "transport," "transmit," and applicable definitions include "to move while supporting," and "to hold, wear, or have upon one's person." *Webster's* at 343. Thus, one need not carry the weapon in one's hand. "Carrying" includes to have on one's person.

The plain language of the statute informs the public that no person may furtively or secretly carry a dangerous weapon, as opposed to openly or publicly carry it, when such conduct is engaged in with the intent to conceal the dangerous weapon. An ordinary person should be able to tell that carrying a knife constituting a dangerous weapon in an inside coat pocket, i.e., carrying it stealthily or secretly, with the intent to conceal that weapon, violates the statute. Accordingly, the statute survives the first prong of the vagueness challenge, because it defines the

---

[3] The Court of Appeals found the term "dangerous weapon" to be adequately defined, and Myles does not challenge that finding.

offense with sufficient definiteness to inform ordinary people what conduct is proscribed.

To survive the second prong of a vagueness challenge, the statute must provide ascertainable standards of guilt. In this regard, an intent element in a statute may provide a sufficient limit on police discretion. *Tacoma v. Luvene*, 118 Wn.2d 826, 847, 827 P.2d 1374 (1992). The Court of Appeals reasoned that concealing is not criminal, and therefore the "intent to conceal" element in this statute is an insufficient limit on police discretion. To survive a vagueness challenge, the Court of Appeals reasoned, the word "furtive" must be construed as describing an activity that expresses the hidden motive. The court said that merely carrying an item does not usually involve identifiable conduct because it is not an overt movement. Therefore, the Court of Appeals further reasoned, an overt movement, done furtively in a way meant to escape notice, is required. *Myles*, 75 Wn. App. at 646-47.

■ This conclusion is erroneous for two reasons. First, in a vagueness challenge the court does not analyze portions of a statute in isolation; instead, a statute is viewed as a whole to see if it has the required degree of specificity. *Haley v. Medical Disciplinary Bd.*, 117 Wn.2d 720, 741, 818 P.2d 1062 (1991); *see Douglass*, 115 Wn.2d at 181 (the question is whether the terms of the statute are inherently subjective in the context in which they are used). Thus, contrary to the Court of Appeals' suggestion, the question is not simply whether concealing may be innocent behavior.

■ A comparable question was addressed in *Halstien*. There, the defendant argued that the juvenile sexual motivation statute was unconstitutionally vague because it did not distinguish between innocent and guilty sexual motivation. The court rejected the argument because that statute requires the sexual motivation to be connected with the criminal conduct of the defendant. *Halstien*, 122 Wn.2d at 120. Similarly, in this case, the intent to conceal element must be read along with the rest of the statute

which defines the criminal conduct. When so read, "innocent" concealment is not encompassed by the statute; the statute requires an intent to conceal a *dangerous weapon*, which is carried furtively, stealthily, secretly, or slyly.

Second, "furtively" pertains to the conduct element of this crime, not the intent element, and, as explained above, the proscribed conduct of furtively carrying a dangerous weapon is sufficiently definite to inform the public; it is also sufficiently definite to guide law enforcement.

The Court of Appeals incorrectly reasoned that only an overt movement done furtively could establish the requisite criminal intent. *Halstien* is again instructive. We said with regard to the juvenile sexual motivation statute that it "requires evidence of identifiable conduct by the defendant while committing the offense which proves beyond a reasonable doubt the offense was committed for the purpose of sexual gratification." *Halstien*, 122 Wn.2d at 120. In holding that the statute provides ascertainable standards of guilt preventing arbitrary enforcement, we did not describe particular conduct which, and only which, establishes the requisite intent. *Halstien*, 122 Wn.2d at 121.

RCW 9.41.250 by its terms does not require a furtive overt movement. It does require evidence of intent to conceal a dangerous weapon. As in *Halstien*, we need not, and do not, describe the particular conduct or circumstances which might establish that intent. While an overt movement may evidence such intent, so might other action or even inaction (or perhaps what a person says, in context), depending upon the circumstances. Rather than requiring a furtive overt movement evidencing intent to conceal, what the statute requires is evidence that defendant's conduct in light of all the circumstances proves beyond a reasonable doubt that a dangerous weapon was furtively or secretly carried with the intent to conceal it. *See also Luvene*, 118 Wn.2d at 847.

■ Lastly, we note that our reading of the statute is consistent with its apparent purpose. The statute is clearly designed to deter and punish the carrying of dangerous weapons under conditions which create an increased risk of unexpected or unforewarned violence. An invariable requirement of a furtive *overt movement* is somewhat at odds with the stealthy or secretive conduct prohibited.

RCW 9.41.250 survives the second prong of the due process challenge. By requiring evidence establishing the statutory intent element, the statute provides ascertainable standards of guilt which prevent arbitrary enforcement.

We reverse the Court of Appeals' holding that a "furtive overt movement" element must be read into the statute.

## II

The remaining question is whether there was sufficient evidence to convict Myles under RCW 9.41.250.

■ When reviewing the sufficiency of the evidence to support a conviction, "the question is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Joy*, 121 Wn.2d 333, 338, 851 P.2d 654 (1993) (citing *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)). " 'When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.' " *Joy*, 121 Wn.2d at 339 (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

Finding of fact 6 states that "[t]he Court held that the respondent furtively carried the dangerous weapon with intent to conceal." Finding of fact 6, Clerk's Papers at 10. In accord with Officer Johnson's testimony, finding of fact 3 states that when Johnson approached Myles, Myles "began yelling profanities at the police officers while rummaging around with her hands in her coat pockets." Finding of fact 3, Clerk's Papers at 10.

Officer Johnson also testified:

> [Myles] was standing with her hands in her coat pockets. She appeared to be reaching for something, I wasn't sure what it was. I thought it might be a weapon.
>
> . . . .
>
> As I patted down her left side of her coat I felt something that was hard. I thought it might be a weapon, so I reached inside and removed it. And it turned out to be a knife.

Report of Proceedings at 5-6. Officer Johnson did not find the knife in the "exact pocket" where Myles had her hands, but "[i]t was right behind the pocket, however. On the inside pocket." Report of Proceedings at 9.

The evidence supports the finding that Myles furtively carried the knife. Undisputed evidence shows that the knife was carried in an inner pocket, an unusual and suspicious place to carry a knife.[4]

The evidence also supports the finding that Myles carried the knife with the intent to conceal it. In addition to the evidence set forth above, other findings, supported by the evidence, are that Myles was a sixteen-year-old girl on the streets of Seattle at 1 A.M., in the presence of other people in an inhospitable situation. The knife was hidden from view, in an *inner* pocket, closest to her person. The knife was a paring knife, i.e., a kitchen knife, secretly carried at a time and place where a kitchen knife would not generally be used as a kitchen knife.

The Court of Appeals is reversed. The conviction is affirmed.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, and TALMADGE, JJ., concur.

ALEXANDER, J. (dissenting) — Although I agree with the majority that RCW 9.41.250 passes constitutional muster,

---

[4]While Myles argued to the Court of Appeals that the knife was not a dangerous weapon, she has abandoned that argument at this stage of the proceedings.

I disagree with its conclusion that the evidence produced at trial was sufficient to support Dalona Myles's conviction. I, therefore, dissent.

The version of RCW 9.41.250 with which we are here concerned makes it a crime to "furtively carry with intent to conceal any . . . dangerous weapon[.]" The majority concludes that the trial court did not err in finding that Myles furtively carried a dangerous weapon, a small paring knife, with intent to conceal. In my judgment, this conclusion is flawed because the evidence that the majority points to as support for this finding is that the knife was "carried in an inner pocket, an unusual and suspicious place to carry a knife." (Majority at 817.) This evidence does not support the trial court's finding.

The majority's conclusion is particularly troubling because it is tantamount to holding that any knife that is carried in an inner pocket is being carried furtively. The holding does not accord the term "furtively" its ordinary meaning, which even the majority concedes means "done by stealth," "secret," "sneaky," "sly," or "surreptitious." *Webster's Third New International Dictionary* 924 (3d ed. 1986). Unfortunately, the majority's holding renders the term "furtively" mere surplusage, and ignores the maxim that, whenever possible, every word of a statute should be given effect. *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 13, 810 P.2d 917, 817 P.2d 1359 (1991).

Although I recognize that there is evidence that Myles was carrying the paring knife with intent to conceal it, there is simply no evidence that she was carrying it in a furtive matter. Myles was not carrying the knife in a sneaky or stealthy way. Rather, she was carrying it in her pocket, which I believe is a usual and ordinary place for one to carry items of any sort.

The majority opinion casts a very large net for the statute in question. It follows from the opinion, seemingly, that anyone with a pocket knife in a purse or pocket runs afoul of the statute. Such a result makes no sense and is contrary to what appears to me to be the Legislature's

intent to punish the sneaky or stealthy carrying of dangerous weapons.

The Legislature, presumably for good reasons, chose to make it a crime to carry a dangerous weapon "furtively" with intent to conceal. It did not choose to make it a crime to merely carry a concealed dangerous weapon. Had the Legislature intended to make it a crime to simply carry a concealed knife, it would not have added the term "furtively" to the statute. It did so and we cannot ignore the presence of that word which modifies "carry."

Although we have not been presented with any legislative history that sheds light on why the Legislature added the word "furtively" to the statute, it is reasonable to assume that it added it in an effort to make it a crime to carry knives in a sneaky manner — places where one would ordinarily not carry a knife. For example, carrying a knife in one's boot, up one's sleeve, down one's back or in the shaft of an umbrella or cane are all examples of carrying a dangerous weapon furtively. We do not have such conduct here.

Finally, I feel constrained to respond to what the majority describes as evidence "in addition" to the evidence of concealment, i.e., that Myles was a sixteen-year-old on the streets of Seattle at 1:00 A.M. in an "inhospitable situation." (Majority at 817.) That the majority saw fit to mention these facts underscores the paucity of evidence supporting the trial court's finding. None of the so-called additional evidence has any relevance on the question of whether Myles was "furtively" carrying the paring knife. While this sixteen-year-old young woman, perhaps, should not have been on the streets of Seattle late at night, she was not charged here with a curfew violation or with being in an inhospitable environment. She was charged with furtively carrying a dangerous weapon with intent to conceal it and there simply was no evidence to support the finding that she was doing so. I would affirm the Court of Appeals.

JOHNSON and PEKELIS, JJ., concur with ALEXANDER, J.