19 P.3d 1012 (2001)
143 Wash.2d 162
STATE of Washington, Petitioner,
v.
Kelly Russell SULLIVAN, a/k/a Kelly Russell., Sullivan, Respondent.
No. 69334-0.
Supreme Court of Washington, En Banc.
Argued November 30, 2000.
Decided March 8, 2001.
*1014 Schroeter, Goldmark, Bender, Amanda Elizabeth Lee, Seattle, amicus curiae on behalf of Washington Ass'n of Criminal Defense Lawyers.
Washington Ass'n of Prosecuting Attys., Pamela Bethloginsky, Olympia, Russesll Hauge, Kitsap County Prosecutor, Randall Avery Sutton, Deputy, Port Orchard, for Petitioner.
Law Offices of Ronald D. Ness & Assoc., Ramona Coral Brandes, Port Orchard, for Respondent.
*1013 SMITH, J.
Petitioner State of Washington seeks direct review of a decision of the Kitsap County Superior Court which affirmed a Kitsap County District Court order dismissing with prejudice a criminal charge of barratry against Respondent Kelly Russell Sullivan, a/k/a Kelly Russell., Sullivan, in violation of RCW 9.12.010. Review was granted on May 18, 2000. We affirm.

QUESTION PRESENTED
The question presented in this case is whether documents designated as "Demand for Particulars" purportedly served by Respondent Sullivan upon law enforcement officers who cited him for traffic infractions "purported to be or resembled judicial process" in violation of the barratry statute, RCW 9.12.010.

STATEMENT OF FACTS
On September 9, 1997, Respondent Kelly Russell Sullivan, a/k/a Kelly Russell., Sullivan,[1] was stopped by Bremerton Police Officers [FNU] Johnson and [FNU] Olsen for a traffic infraction.[2] Respondent asked both officers to complete "public servant question[naires]" which he handed to them.[3] When the officers refused, he asked for a supervisor. Sergeant [FNU] Fuller of the Bremerton Police Department came to the scene.[4] Respondent claimed the officers were extorting him into entering a contract in violation of U.C.C. 3-501 [commercial paper], with reference to 42 U.S.C. § 1986, 1985, 1983 [relating to violation of individual rights by government action], and 18 U.S.C. *1015 § 141 and § 142 [repealed July 1, 1944].[5] A traffic infraction citation was issued to Respondent.[6]
On October 2, 1997, Kitsap County Deputy Sheriff Karen Demerick stopped a pickup truck operated by Respondent because the vehicle license had expired in March 1997.[7] In the vehicle with Respondent was a male person who identified himself as Tim (or Tom) Duffey.[8] Respondent inquired whether Deputy Sheriff Demerick knew she was violating his constitutional rights under the 2nd, 4th, 5th and 6th Amendments.[9] She issued him a traffic infraction citation for expired vehicle license and no proof of liability insurance.[10]
On or about September 9, 1997, Respondent "served" upon Police Officers Johnson, Olsen and Sergeant Fuller documents which he characterized as "Demand for Particulars."[11] The three sets of 12-page computer word-processed documents were actually photocopies of the same document, identical in form and content, containing 73 questions somewhat akin to interrogatories.[12]
On October 10, 1997, Respondent "served" Deputy Sheriff Demerick with one five-page set of documents,[13] followed a day later by an additional eight-page document designated as "Demand for a Bill of Particulars."[14] Each set of documents varied slightly in form and content. The second document is similar to those Respondent "served" upon the Bremerton Police officers about a month earlier.[15]
The documents Respondent "served" upon all four law enforcement officers[16] are substantially similar. They bore headings similar to captions on most documents submitted to a court. They contained "case" headings indicating (1) "Bremerton Muncipal Court in and for The County of Kitsap, State of Washington/City of Bremerton Plaintiff(s) v. Sullivan Kelly R. Defendant(s);"[17] and (2) "Kitsap County District Court Silverdale In and for the County of Kitsap, State of Washington/County *1016 of Kitsap Plaintiff, v. Sullivan Kelly Russell Defendant."[18]
The documents identified the State of Washington and either the City of Bremerton or the County of Kitsap as Plaintiff and Respondent Sullivan Kelly R[ussell] as Defendant and used the numbers of the traffic infraction citations he received as the case numbers.[19] The documents are identified as originating from Respondent[20] and are signed by him.[21]
The document Respondent characterized as a "Demand for Particulars" contains these words in all capitals: "THIS IS LEGAL PROCESS, YOU ARE COMPELLED TO RESPOND."[22] The "demand for particulars" then stated:
This Demand is to be previewed in the nature of, and in fact is, a demurrer to discover nature and cause of action, and is used to determine the course/right of action for relief/remedy. The following questions are necessary, imperative, and material for the preparation of any dilatory pleadings or pleadings in bar involving this matter.
Demandant will be deprived and prejudiced of Demandant's unalienable rights under Nature's law and Nature's God as recognized under Due Process clause of the Fourth and Fifth Amendments to the Constitution of the (u) united States of America, Amended 1791 (without the legislative venue/jurisdiction), 1835, Article 1, Section 10-Right of the Accused.
If this demand is not the proper procedure to determine the nature and cause of the Above Case, then Demandant hereby empowers YOU and invokes YOUR Authority under the common law principle of the Brother's Keeper rule to purview this demand into the proper procedure and process as the protection of the Demandant's rights so require.
Following the 73 questions in Respondent's "demand for particulars," these statements were made:
The foregoing demand for Bill of Particulars is not to be construed as discovery, a traverse into any issue(s), a general appearance, a waiver of any rights, or in any way a motion or joinder to the above Case or the tribunal, nor discovery to the merits of the above Case.
Failure by you to timely respond to the Demand for Bill of particulars within ten (10) day's or as a seasonably requested extension will establish, will be construed as an attempt by the officers of the court to withhold full disclosure as to the nature and cause of the action(s) purportedly brought in the above Case, and will make it impossible for the Demandant to meaningfully respond to the process issued or caused to be issued by the officers of the Court and will be used as Prima Facie evidence of Fraud, Bad Faith and Criminal Intent to deprive Demandant of his right of redress, due process, and civil rights as defined in Title 42 Section(s) 1983, 1984, 1986. U.S.C.A.
....
Further, failure to provide a true sworn, accurate and complete Bill of Particulars forthwith shall be construed as an admission of Fraud, a declaration that the Above Case is Nocumentum injuriosum, and constructive intent by the City of Bremerton to enter a nolle prosequi by tacit procuration.[[23]]
On December 11, 1997, the Prosecuting Attorney of Kitsap County charged Respondent Sullivan in the Kitsap County District *1017 Court with one count of barratry in violation of RCW 9.12.010 as follows:
On or about the 10 day of October, 19 97, in the County of Kitsap, State of Washington, the above-named Defendant did (1) bring on his or her own behalf, or instigate, incite, or encourage another to bring, any false suit at law or in equity in any court of this state, with intent thereby to distress or harass a defendant in the suit; and/or (2) serve or send any paper or document purporting to be or resembling a judicial process, that is not in fact a judicial process; contrary to Revised Code of Washington 9.12.010.[[24]]
The complaint was later amended to indicate violation dates of the "9th day of October, 1997 through the 11th day of October 1997."[25] Respondent was arraigned on December 19, 1997.[26] Upon his refusal to enter a plea, the court entered a plea of "not guilty" for him.[27]
On January 28, 1998, Respondent in open court orally requested a bill of particulars in the barratry case.[28] On February 10, 1998, the court denied his request, indicating he had already been provided with the information requested.[29] Respondent by motion sought to transfer the case to the United States District Court for the Western District of Washington in Tacoma and to the Kitsap County Superior Court. Both motions were denied.[30] His several motions to dismiss the charges were denied.[31]
On April 28, 1998, Respondent made a motion to dismiss under State v. Knapstad,[32] claiming the State could not establish a prima facie case of barratry against him. It was initially denied by the Kitsap County District Court.[33] However, Respondent renewed the motion after the Honorable Terry K. McCluskey, Kitsap County Superior Court, on July 14, 1998 granted a Knapstad motion to Timothy Charles Duffey a/k/a Timothy Charles., Duffey in a similar case charging Mr. Duffey with violation of the barratry statute, RCW 9.12.010.[34]
On July 22, 1998, the Kitsap County District Court, the Honorable Stephen E. Alexander, granted Respondent's renewed motion to dismiss.[35] The State filed a timely notice of RALJ appeal on July 27, 1998.[36] The appeal was stayed pending resolution by the Court of Appeals, Division Two, of the State's appeal of the order issued by Judge McCluskey in State v. Duffey.[37] The Court of Appeals in that case on July 23, 1999 affirmed dismissal of the barratry charge against Defendant Duffey.[38] Following that decision, the stay was lifted in Respondent *1018 Sullivan's case. An order affirming the District Court's decision to dismiss the barratry charge against Respondent was entered by the Honorable M. Karlynn Haberly, Kitsap County Superior Court, on March 17, 2000.[39] On that date, the State filed a notice of direct discretionary review.[40] The Supreme Court Commissioner by ruling granted review on May 18, 2000.[41]

DISCUSSION
Inasmuch as the District Court and Superior Court decisions in this case admittedly were directly affected by the July 23, 1999 decision of the Court of Appeals in State v. Duffey, both Petitioner State of Washington and Respondent Sullivan now ask this court to consider the merits of the Duffey decision in this case because of the claimed similarity of the charges. This would be improper because (a) this court on January 5, 2000 granted review in the Duffey case and that review is still pending; (b) regardless of any claim of similarity with Duffey, Respondent Sullivan is not a party to that case; and (c) review of the Duffey decision must be based upon established rules and procedures relating only to that case unless that case and this case were consolidated before this court. They were not. This case must be decided on its own merits. Our discussion in this case nevertheless to some extent parallels the discussion by the Court of Appeals in Duffey. In his ruling granting review on May 18, 2000, the Commissioner stayed further proceedings in this court in Duffey "pending this court's decision in this case."[42]
The crime of barratry is governed by RCW 9.12.010 which reads:
Barratry. Every person who brings on his or her own behalf, or instigates, incites, or encourages another to bring, any false suit at law or in equity in any court of this state, with intent thereby to distress or harass a defendant in the suit, or who serves or sends any paper or document purporting to be or resembling a judicial process, that is not in fact a judicial process, is guilty of a misdemeanor, and in case the person offending is an attorney, he or she may, in addition thereto be disbarred from practicing law within this state.[[43]]
Petitioner State of Washington argues that the Superior Court erred in affirming the District Court order of dismissal with prejudice on a Knapstad motion of the criminal charge of barratry against Respondent Sullivan.[44] Petitioner claims the facts in this case, in particular Respondent's "serving" the law enforcement officers with documents designated "Demand for Particulars," establish a prima facie case of barratry. Respondent answers that the trial court properly dismissed the barratry charge relying upon the Court of Appeals decision in State v. Duffey, a case with facts substantially similar to this one.
Petitioner argues that under the barratry statute the State is not required to prove that Respondent's pro se "Demand for Particulars" actually constitutes "judicial process." It asserts the State need only prove Respondent's document resembles or purports to be judicial process,[45] and that is a question for the jury.[46]
Under RCW 9.12.010, one who serves or sends "any paper or document purporting to be or resembling a judicial process, that is not in fact a judicial process" may commit the offense of barratry. The statute does not define "judicial process." Nor is there any legislative history explaining the meaning of the term.[47] Other statutes use the term *1019 "judicial process," applying it in different ways. Some statutes use the term referring to actions the court takes to impose jurisdiction or compel compliance with its directives.[48] Other statutes refer to judicial action indirectly.[49] At least one statute applies the term broadly.[50] No barratry statute from another state has been cited which contains the words "judicial process" or any provision similar to it.
"`This court has the ultimate authority to determine the meaning and purpose of a statute.'"[51] In interpreting statutory provisions, the primary objective is to carry out the intent of the Legislature.[52] When a statute is unambiguous, it is not subject to judicial construction and its meaning must be derived from the plain language of the statute alone.[53] We do not add to or subtract from the clear language of a statute unless that is imperatively required to make the statute rational.[54] Legislative definitions provided by the statute are controlling.[55] In the absence of a statutory definition, we will give the term its plain and ordinary meaning[56] ascertained from a standard dictionary.[57] We will avoid unlikely, absurd or strained consequences.[58]
On its face, RCW 9.12.010 is not ambiguous. There is no need for judicial interpretation beyond its plain language. Although the term "judicial process" is not defined, this court may resort to dictionary definitions to ascertain the term's plain and ordinary meaning.[59]Webster's Third New International Dictionary defines "judicial process" as "the series of steps in the course of the administration of justice through the established system of courts."[60]Black's Law Dictionary defines "judicial process" as follows: "In a wide sense, this term may include all the acts of a court from the beginning to the end of its proceedings in a given cause; but more specifically it means the writ, summons, mandate, or other process which is used to inform the defendant of the institution of proceedings against him and to compel his appearance, in either civil or criminal cases."[61] A later edition of Black's Law Dictionary defines "judicial" as "[o]f, relating to, or by the court" and defines "process" as "[t]he proceedings in any action or prosecution; [a] summons or writ, esp. to appear or respond in court."[62]
In addition, a later edition of Webster's Third New International Dictionary defines the term "judicial" as "of, relating to, or *1020 concerned with a judgment, the function of judging, the administration of justice, or the judiciary; ordered or enforced by a court or other legal tribunal."[63]
Black's Law Dictionary defines "judicial" in several ways:
Belonging to the office of a judge; as judicial authority. Relating to or connected with the administration of justice; as a judicial officer. Having the character of judgment or formal legal procedure; as a judicial act. Proceeding from a court of justice; as a judicial writ, a judicial determination. Involving the exercise of judgment or discretion; as distinguished from ministerial.... [and][o]f or pertaining or appropriate to the administration of justice, or courts of justice, or a judge thereof, or the proceedings therein; as, judicial power, judicial proceedings.[[64]]
In the context of both civil and criminal proceedings, Black's Law Dictionary defines "process" as:
[A]ny means used by court to acquire or exercise its jurisdiction over a person or over specific property. Means whereby court compels appearance of defendant before it or a compliance with its demands.
When actions were commenced by original writ, instead of, as at present, by summons, the method of compelling the defendant to appear was by what was termed "original process," being founded on the original writ, and so called also to distinguish it from "mesne" or "intermediate" process, which was some writ or process which issued during the progress of the suit. The word "process," however, as now commonly understood, refers to a summons, or, summons and complaint, and, less commonly, to a writ. The content of the summons, and service requirements, are provided for in Rule of Civil Proc. 4.[[65]]
In this case, the ordinary definition of "judicial process" is consistent with the general purposes of the barratry statute, which is to prohibit false lawsuits in any court, with intent to distress or harass a defendant, or serving or sending any paper or document purporting to be or resembling a judicial process, that is not in fact a judicial process. The language is plain and unambiguous.
Petitioner contends Respondent Sullivan's "Demand for Particulars" purports to be or resembles "legal process" which Petitioner asserts is synonymous with the term "judicial process." It claims the words "THIS IS LEGAL PROCESS, YOU ARE COMPELLED TO RESPOND" are clear indication of Respondent's intent that his document resemble or purport to be "judicial process." Petitioner asserts that Respondent's demand was somewhat similar to a summons, which would qualify as "judicial process."[66] The "Demand for Particulars" had a caption indicating a court and named parties, directed the recipient to respond within a stated time, warned of consequences for failure to respond, contained the signature and address of the party sending it, and included "proof of service." Petitioner's documents did not purport to be summonses nor did they in any manner resemble summonses.
Since September 1, 1992 cases involving "infractions" in courts of limited jurisdiction have been governed by Infraction Rules for Courts of Limited Jurisdiction (IRLJ). Under IRLJ 1.1(a) infractions are "noncriminal violations of law defined by statute" and under 1.1(c) the rules "supersede all conflicting rules and statutes covering procedure for infractions unless a rule indicates a statute or rule controls." Infractions are governed exclusively by the IRLJ, consisting of Rules 1.1 through 6.7.
IRLJ 3.1(a) provides for issuance of subpoenas to witnesses by "a judge, court commissioner, or clerk of the court or by a party's lawyer." None of the documents in this case purported to be subpoenas.
IRLJ 3.1(b) provides for discovery as follows:

*1021 Upon written demand of the defendant at least 14 days before a contested hearing, the plaintiff's lawyer shall at least 7 days before the hearing provide the defendant or defendant's lawyer with a list of the witnesses the plaintiff intends to call at the hearing and a copy of the citing officer's sworn statement if it will be offered into evidence at the hearing. Upon written demand of the plaintiff's lawyer at least 14 days before the hearing, the defendant shall at least 7 days before the hearing provide the plaintiff's lawyer with a list of the witnesses the defendant intends to call at the hearing. No other discovery shall be required. Neither party is precluded from investigating the case, and neither party shall impede another party's investigation.
IRLJ 3.1(d) relates to sufficiency of essential facts constituting a specific infraction:
No notice of infraction shall be deemed insufficient for failure to contain a definite statement of the essential facts constituting the specific infraction which the defendant is alleged to have committed, nor by reason of defects or imperfections which do not tend to prejudice substantial rights of the defendant.
Regardless whether we characterize the documents issued by Respondent Sullivan as legal pleadings or legal process, Respondent, acting pro se, is required to follow applicable court rules. Whether through ignorance or by choice, Respondent completely disregarded court rules applicable to the infraction citations issued him. He was not entitled to a bill of particulars on the infraction citation. His crude attempt to use discovery to demand information on the infraction citations was contrary to the IRLJ. Petitioner State might have sought sanctions for this violation, but apparently chose not to do so. Instead, Petitioner unwisely chose to charge Respondent with the criminal offense of barratry under RCW 9.12.010.
Respondent Sullivan may not properly issue any documents he creates or adapts unless he conforms to the requirements of all applicable statutes and rules of court. In total disregard of the IRLJ, Respondent purported to serve pseudo-legalistic documents. They contain language, terms, citations and expressions which make no sense at all. Perhaps most charitably they can be characterized as semi-literate gibberish.
Petitioner State claims other jurisdictions with statutes similar to our barratry statute have construed the scope of the term "process" broadly.[67] Petitioner principally relies upon a Missouri Court of Appeals decision, State v. Joos,[68] in which the defendant was found guilty of "simulating legal process." In that case, the defendant prepared and served upon a state trooper a document purporting to be an order issued by a United States District Court for "arrest of judgment/stay of execution."[69] The district court struck the document, concluding it sufficiently masqueraded as a bona fide order of that court.[70] The State then successfully prosecuted the defendant for violation of a Missouri statute prohibiting "simulating legal process." The Missouri Court of Appeals affirmed, reasoning that "the word `process' is used as a general term and denotes the means whereby a court compels a compliance with its demands."[71] The Missouri statute is worded differently from Washington's barratry statute and State v. Joos is distinguishable from this case on its facts.
Respondent Sullivan's "Demand for Particulars" does not in fact simulate, resemble or purport to be a court order. Nothing in either of the several documents indicated they were issued by a court. They purported only to be demands for a bill of particulars issued by Respondent himself, acting pro se. By some imaginative stretch of logic, one might fathom a suggestion of court participation by Respondent's listing in brackets *1022 "Federal Rule of Criminal Procedure Rule 7(f)" under the subheading "Demand for bill of Particulars" and in another document "Notice of Refusal for Fraud Pursuant to F.R.C.P.9(b)" Under the facts of this case, however, we do not interpret those minimal references as invoking participation by any court.

Constitutionality of RCW 9.12.010
A statute is presumed constitutional, and the burden is on the party challenging it as unconstitutionally vague to prove beyond a reasonable doubt that it fails to make plain the general area of conduct it prohibits.[72]
Respondent contends the barratry statute, RCW 9.12.010, is unconstitutional under the Fourteenth Amendment to the United States Constitution[73] because it is vague "on its face" and "as applied" to his conduct of serving documents designated "Demand for Particulars" upon the law enforcement officers who cited him for traffic infractions.[74] He claims the barratry statute violates the due process clause because it does not give notice of the prohibited conduct and does not provide ascertainable standards for enforcement. Petitioner counters that because the barratry statute does not implicate any First Amendment rights, this court need only determine whether the statute is unconstitutionally vague as applied to Respondent's conduct.[75] However, Petitioner does not cite any authority to support its position, but merely concludes that the First Amendment right to petition does not extend to "frivolous actions."[76]
"The due process clause of the Fourteenth Amendment requires [that citizens be afforded] fair warning of proscribed conduct."[77] Fair warning of prohibited activity is required so citizens "may plan their activity accordingly and freely enjoy those activities which are not expressly illegal."[78] "`The purpose of the vagueness doctrine is to ensure that citizens receive fair notice as to what conduct is proscribed, and to prevent the law from being arbitrarily enforced.'"[79] Under the due process clause, a statute is unconstitutionally vague if (1) it does not define the criminal offense with sufficient *1023 definiteness that ordinary persons can understand what conduct is proscribed, or (2) it does not provide ascertainable standards of guilt to protect against arbitrary enforcement.[80] A statute is unconstitutionally vague if either test is not satisfied.[81] Amicus Curiae Washington Association of Criminal Defense Lawyers filed a brief arguing in support of Respondent's claims of constitutional violations. We respond only to the claims actually made by Respondent.
Under part one of the vagueness test, a statute is not sufficiently definite if it is framed in terms so vague that persons of "common intelligence" must necessarily guess at its meaning and differ as to its application.[82] This test, however, does not require impossible standards of specificity or absolute agreement[83] because some measure of vagueness is inherent in the use of our language.[84] "`Condemned to the use of words, we can never expect mathematical certainty from our language.'"[85] Part two of the vagueness test requires a court to examine the terms of the statute to see if they contain "`minimal guidelines ... to guide law enforcement.'"[86] The relevant question in this case is whether the barratry statute proscribes conduct by resort to "inherently subjective terms."[87] We conclude it does not.
In examining Respondent's challenge to the constitutionality of RCW 9.12.010, the first step is to determine whether the statute is to be evaluated "as applied" to the particular case or to be reviewed "on its face."[88] A challenged statute is facially vague if its terms "`are so loose and obscure that they cannot be clearly applied in any context.'"[89] However, a statute that does not involve First Amendment rights must be evaluated in light of the particular facts of the caseas appliedrequiring inspection of the actual conduct of the party challenging the statute.[90]
In this case, Respondent claims RCW 9.12.010 is unconstitutionally vague on its face[91] because it affects his rights under the First Amendment to the United States Constitution[92] and article I, section 5 of the Washington State Constitution.[93] He merely concludes that "First Amendment protections *1024 extend to written documents ... [and][s]ince RCW 9.12.010 concerns the proscription of written documents, it does implicate a First Amendment right."[94] He cites no authority for this argument. His mere request for a response to his "Demand for Particulars" does not put into operation his First Amendment rights, nor are his rights under article I, section 5 of the Washington Constitution offended.
When a challenged statute does not involve First Amendment rights, the statute is evaluated for vagueness "as applied" in light of the particular facts of the case.[95] Respondent argues RCW 9.12.010 lacks sufficient definiteness as applied because the statute does not give proper notice of what behavior it prohibitswhether documents entitled "Demand for Particulars" constitute "judicial process."[96] He asserts that, for the purpose of gathering more information to defend against his traffic infractions, he served his "Demand for Particulars" signed by him, not purporting to be signed by a judge or issued from a court, upon the law enforcement officers who issued the traffic citations to him.[97] He claims that, acting pro se, he was merely requesting information he considered necessary for understanding the precise nature of the charge filed against him under the traffic infraction citation.
Statutes are not void for vagueness merely because all their possible applications cannot be specifically anticipated.[98] A reviewing court will not invalidate a statute simply because it believes the statute could have been drafted with greater precision.[99] "`[A] statute is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which [that person's] actions would be classified as prohibited conduct.'"[100] Although RCW 9.12.010 does not define the term "judicial process," the statute is not unconstitutionally vague. When a statute does not define a term, the court may ascertain its plain and ordinary meaning from a standard dictionary.[101]
Although the meaning of "judicial process" is not defined, this is not a sufficient basis for concluding that RCW 9.12.010 is vague beyond a reasonable doubt. The terms of the challenged statute are considered in the context of the entire statute.[102] The language of a statute "is afforded a sensible, meaningful, and practical interpretation."[103] We conclude that RCW 9.12.010 is not unconstitutionally vague.
Under the sufficiency requirement of the vagueness test, the barratry statute, RCW 9.12.010, defines the offense with sufficient definiteness that an ordinary person could determine whether Respondent's "Demand for Particulars" constituted "judicial process." The statute provides an ordinary person with constitutionally sufficient notice. The barratry statute, RCW 9.12.010, is not unconstitutionally vague on its face nor as applied to Respondent's case.
Respondent's "Demand for Particulars" did not constitute "judicial process" under the barratry statute. It consisted of almost incomprehensible language, contained many irrelevant and inartfully stated questions, referred to federal statutes and court rules of questionable relevance, used pseudo-legalistic terms, was signed by him and not by a judge, was not issued by a court, and requested a response direct to him.
*1025 The trial court correctly determined as a matter of law that Respondent Sullivan's purported service of documents characterized as "Demand for Particulars" upon law enforcement officers who cited him for traffic infractions did not meet the requirement of RCW 9.12.010 that the documents purport to be or resemble "judicial process." It is apparent under the facts of this case that Respondent, acting pro se, tried to imitate what he perceived would be documents or pleadings issued by lawyers. Although he did not follow applicable rules of court (IRLJ), in none of his documents did he indicate they were signed by or issued by a judicial officer nor that any conduct attendant to the documents was subject to judicial action. Respondent's "Demand for Particulars" did not constitute "judicial process." The trial court was correct in dismissing with prejudice the criminal complaint of barratry against Respondent Sullivan.

SUMMARY AND CONCLUSIONS
A party challenging the constitutionality of a statute bears the burden of proving it is unconstitutional beyond a reasonable doubt. Respondent Sullivan has not met his burden of establishing that RCW 9.12.010 is unconstitutionally vague. RCW 9.12.010 is not unconstitutionally vague simply because the term "judicial process" is not defined. Its meaning need not achieve mathematical certainty, but is measured against the purpose of RCW 9.12.010 to proscribe the use of any paper or document purporting to be or resembling judicial process.
The term "judicial process" lends itself to either a broad or narrow construction. There are no reasons in this case to justify a broad construction of the term. The question arises whether any construction of "judicial process" would include documents such as Respondent Sullivan's "Demand for Particulars," which he purported to serve upon the law enforcement officers who cited him for traffic infractions. It does not. We adapt from Black's Law Dictionary the definition of "judicial process" as "all acts of a court from the beginning to the end of its proceedings in a given cause-the writ, summons, mandate or other process used to inform parties of institution of court proceedings and notices to compel appearance and participation in civil or criminal cases under applicable statutes and rules of court."
Respondent's "Demand for Particulars" did not constitute "judicial process" under the statute. The documents contained questionable and irrelevant citations of statutes and court rules, inartfully stated questions, were issued and signed by him and not by a judge, and requested responses direct to him. Acting pro se, Respondent imitated documents he perceived to be documents or pleadings that would be issued by a lawyer. He did not represent them as documents issued by a court or subject to judicial action.
In bombarding the citing officers with documents demanding responses, Respondent ignored or disregarded the IRLJ which exclusively governs procedures applicable to his traffic infraction citations. He cannot excuse his noncompliance with the rules by claiming ignorance of them, nor by the fact he was acting pro se without the assistance of a lawyer. However much we may disapprove of Respondent's conduct in his traffic infraction cases, his crude and inept attempt to demand a "bill of particulars" nevertheless does not rise to the level of the criminal offense of barratry under RCW 9.12.010. The State of Washington necessarily must find some other method of addressing such uncontrolled and harassing behavior by parties charged with traffic infractions under the IRLJ.
In this case, the trial court correctly determined that, as a matter of law, Respondent Sullivan's "Demand for Particulars" did not purport to be or resemble "judicial process." The trial court correctly dismissed with prejudice the charge of barratry against Respondent.
We affirm the decision of the Kitsap County Superior Court which upheld the order of the Kitsap County District Court dismissing with prejudice the criminal charge of barratry against Respondent Kelly Russell Sullivan, a/k/a Kelly Russell., Sullivan.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, JJ., and GUY, J.P.T., concur.
*1026 TALMADGE, J.[*] (concurring).
While I agree with the majority's disposition of this case, I write separately because we should adopt a narrower and clearer formulation of what constitutes "judicial process" for purposes of RCW 9.12.010.[1] Moreover, the State had other remedies than those set forth in RCW 9.12.010 to deal with Kelly Sullivan's blatant misuse of the legal process.
The majority opinion accurately conveys Sullivan's misuse of the legal process. Sullivan sent lengthy documents described as "Demand[s] for a Bill of Particulars" to the police officers who had issued him traffic infractions for no other reason than to harass. In our courts, bills of particulars may be sought from opposing counsel in criminal matters. See CrR 2.1(c); (authorizing a court to direct the filing of a bill of particulars); CrRLJ 2.4(e) (same); see, e.g., State v. Brett, 126 Wash.2d 136, 156, 892 P.2d 29 (1995). Further, this type of pleading may only be filed pursuant to court rule in a criminal matter and is not allowed pursuant to the Infraction Rules for Courts of Limited Jurisdiction. Specifically, even in a criminal case (which this was not), such a document may not be directed to police officers. It may not masquerade as a set of extra-judicial interrogatories to the officers issuing traffic infractions.
Rather than being merely inartful, Sullivan, in the service of his particular political bent, was intent on causing as much trouble to the traditional legal system as he could. Whether described as Freemen, Militia, Constitutionalists, Patriots, or the like, these individuals hope to do all they can to disrupt our justice system in the hopes its collapse will presage a utopia. See Edward F. Shea, "Common-law Courts?" 50 Wash. St. Bar News 18-19 (May 1996).
Sullivan was acting pro se, but that is no excuse for his conduct. Individuals purporting to represent themselves must be held to the same standards governing all who appear before a court. State v. Smith, 104 Wash.2d 497, 508, 707 P.2d 1306 (1985) (pro se defendant must comply with procedural rules) State v. Bebb, 44 Wash.App. 803, 806, 813, 723 P.2d 512 (self-representation is not a license to avoid compliance with court rules), aff'd, 108 Wash.2d 515, 740 P.2d 829 (1987). This extends to pretrial proceedings.
While Sullivan's conduct was a misuse of the legal process, I agree with the majority he did not commit the crime of barratry. The majority correctly finds RCW 9.12.010, Washington's barratry law, constitutional. It is not vague. See State v. Knowles, 91 Wash.App. 367, 957 P.2d 797 (1998) (threats to judge not constitutionally protected speech). The statute deals with serious misbehavior; people may not knowingly cause others to instigate frivolous legal actions or utilize sham judicial documents.
But the majority defines "judicial process" for purposes of the latter portion of RCW 9.12.010 as "`all acts of a court from the beginning to the end of its proceedings in a given causethe writ, summons, mandate or other process used to inform parties of institution of court proceedings and notices to compel appearance and participation in civil or criminal cases under applicable statutes and rules of court.'" Majority at 1025 (quoting BLACK'S LAW DICTIONARY). Under this broad definition, Sullivan plainly served documents that resembled judicial process on the officers, despite the fact that only a judge can authorize such bills of particulars. See CrR 2.1(c); CrRLJ 2.4(e). Using the majority's broad definitional approach, the demands for bills of particulars could purportedly be judicial process; in fact, they are not. By the majority's own definition of "judicial process," *1027 Sullivan could be arguably guilty of barratry.
The better approach to the definition of the term "judicial process" is to define it as those documents actually executed by a judge or by the court itself. If an individual attempts to serve what appears to be a court order, but it is instead a false document, or issues a false letter purporting to be a letter from the court clerk or commissioner, that individual may be prosecuted for barratry. By contrast, "legal process" would include documents or pleadings not executed by a judge or the court.[2]
Even with this narrower definition, the State is not without tools to deter the misuse of the justice system by people like Sullivan. The documents here could readily have been quashed. Sanctions may, and indeed ought to, be imposed against persons like Sullivan for filing groundless documents. See CR 81 (civil rules for superior court supplement existing rules); CR 11; CRLJ 11. Indeed, numerous other statutory tools may be used. See, e.g., RCW 4.84.185 (sanctions for frivolous action) or RCW 4.24.350 (counterclaim for malicious prosecution).
Sullivan harassed the officers in this case to further his peculiar brand of politics. He should have been sanctioned for such misuse of the legal system. The crime of barratry, however, as presently defined in RCW 9.12.010, is reserved for the filing of sham court orders or other court-generated pleadings, orders, or writings.
NOTES
[1] Clerk's Papers at 79. (Respondent identifies himself as "Demandant ... Kelly Russell., Sullivan."); Br. of Resp't at 3.
[2] Id. at 80.
[3] Id.
[4] Id.
[5] Id.
[6] Br. of Pet'r at 4; Br. of Resp't at 4.
[7] Clerk's Papers at 102 and 111.
[8] Id. at 101, 103, 107 and 108.
[9] Id. at 102.
[10] Id. at 101-04 and 111. Respondent's liability insurance had expired in February 1997.
[11] Id. at 65-100. Respondent's documents designated as "Demand for Particulars" included a page labeled "Proof of Service" which states:

I hereby certify a true and correct copy of the original Demand for Bill of Particulars with Affidavit of verification has been served on this 9[th], Day of September, 1997, to the Prosecuting Attorney of the Bremerton Municipal Court, and to Sgt. Tom Wolfe and Officer Greg Steel at the Bremerton Police Station, 239 4th St. Bremerton, WA. 98310, by private service.
The signature of "Timothy Charles., Duffey" appears below the paragraph as "Server." Id. at 74, 86 and 98.
[12] Id. at 65-100. Each document has sections labeled "Definitions," "Background," "Demand for bill of Particulars" (which contain 73 questions), "Proof of Service," and "Verification of Bill of Particulars." The only difference between the three sets of documents was the handwritten surnames of Officers "Fuller" and "Olsen" on the first page of two sets of documents. Id. at 65 and 89.
[13] The five-page document "served" upon Deputy Demerick on October 10, 1997 has sections labeled "Notice of Refusal for Fraud Pursuant to F.R.C.P. 9(b)," "Affidavit Of Truth In Support With Exhibit (A) `Citation(s) I 20060.' Attached," and "Verification of Refusal for Fraud." Id. at 121-24.
[14] Id. at 113-20. The eight-page document "served" upon Deputy Demerick on October 11, 1997 refers to ten pages"page 1 of 10," and "page(s) 3 of 10" through "page 8 of 10." Page 2 was missing. Both sets of documents were apparently left at the counter of the Kitsap County Sheriff's Office in Silverdale by a male person later identified as Respondent Sullivan. Id. at 106.
[15] The eight-page document has sections labeled "Background," "Demand for bill of Particulars" and "Verification of Bill of Particulars." Id. at 113-20.
[16] The document "served" upon the Bremerton Police Officers on or about September 9, 1997 and the second set of documents "served" upon Deputy Sheriff Demerick on October 11, 1997 are referred to as Respondent's "Demand for Particulars."
[17] Clerk's Papers at 65.
[18] Clerk's Papers at 113.
[19] Clerk's Papers at 65, 77, 89, 113 and 121.
[20] Respondent's name, "hereinafter (`Demandant', `I', `ME', `MINE', or `MY')," his address [and telephone number], appears on the first page above the caption. Also, the footer on nearly every page of Respondent's "Demand for Particulars" states "Respond to: [Respondent's name and address]."
[21] Clerk's Papers at 75, 76, 87, 88, 99, 100, 119 and 120.
[22] Id.
[23] Clerk's Papers at 73, 75, 85, 87, 97, 99, 118 and 119.
[24] Id. at 22. Although awkwardly and cumbersomely worded, the complaint was in the words of the statute.
[25] Id. at 25.
[26] Id. at 49.
[27] Id.
[28] Id. at 51.
[29] Id. at 52.
[30] Id. at 53-55.
[31] Id. at 52-55. (Respondent moved to dismiss the charges against him for lack of jurisdiction; violation of speedy trial; failure to make a prima facie case; and the "lack of jurisdiction in personalia personam sequuntur.")
[32] State v. Knapstad, 107 Wash.2d 346, 349-57, 729 P.2d 48 (1986). A trial court may dismiss a criminal charge before trial if the State has insufficient evidence to prove its case. The defendant initiates the procedure by submitting an affidavit stating "there are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt." If the State does not deny the facts claimed in the defendant's affidavit or asserts other material facts, the court must determine if the undisputed facts, "as a matter of law, establish a prima facie case of guilt." By amended complaint filed on June 16, 1998, Respondent Sullivan was charged with one count of bail jumping for failure to appear in court in connection with the barratry charge. Id. at 56. That charge was later dismissed.
[33] Clerk's Papers at 55.
[34] Id. at 3, 17-20 and 56.
[35] Id. at 3.
[36] Id. at 1-2.
[37] Id. at 58.
[38] State v. Duffey, 97 Wash.App. 33, 981 P.2d 1 (1999), review granted, 139 Wash.2d 1015, 994 P.2d 848 (2000).
[39] Clerk's Papers at 126-27. The State abandoned its appeal from dismissal of the bail jumping charge.
[40] Id. at 128.
[41] Ruling Granting Review, May 18, 2000.
[42] Id.
[43] (Emphasis added.)
[44] Knapstad, 107 Wash.2d at 349-57, 729 P.2d 48.
[45] Br. of Pet'r at 17-18.
[46] See id. at 13.
[47] The Legislature added the "judicial process" provision to the barratry statute by Laws of 1915, ch. 165, § 1. Although the statute was amended in 1995 to address issues of insurance fraud by Laws of 1995, ch. 285, § 27, the "judicial process" provision remains substantially unchanged. See Duffey, 97 Wash.App. at 37-38, 981 P.2d 1.
[48] See RCW 19.150.080(2)(a); RCW 35.81.120(1); RCW 62A.9-311.
[49] See RCW 9A.82.020(2)(a); RCW 10.95.185(7); RCW 11.86.051(1); RCW 19.16.250(13); RCW 62A.2A 525(3); RCW 63.19.060(3); RCW 74.20.010.
[50] See RCW 4.24.350(1) referring to "misuse of judicial process by filing an action known to be false and unfounded."
[51] State v. Alvarez, 128 Wash.2d 1, 11, 904 P.2d 754 (1995) (quoting State v. Hansen, 122 Wash.2d 712, 717, 862 P.2d 117 (1993)).
[52] State v. Wadsworth, 139 Wash.2d 724, 734, 991 P.2d 80 (2000).
[53] Alvarez, 128 Wash.2d at 11, 904 P.2d 754 (citing State v. Smith, 117 Wash.2d 263, 270-71, 814 P.2d 652 (1991)).
[54] State v. Taylor, 97 Wash.2d 724, 728, 649 P.2d 633 (1982).
[55] Am. Legion Post 32 v. City of Walla Walla, 116 Wash.2d 1, 8, 802 P.2d 784 (1991) (citing City of Seattle v. Shepherd, 93 Wash.2d 861, 866, 613 P.2d 1158 (1980)).
[56] Am. Legion Post 32, 116 Wash.2d at 8, 802 P.2d 784; City of Spokane v. Fischer, 110 Wash.2d 541, 543, 754 P.2d 1241 (1988).
[57] Am. Legion Post 32, 116 Wash.2d at 8, 802 P.2d 784; State v. Myers, 133 Wash.2d 26, 33, 941 P.2d 1102 (1997) (citing State v. Pacheco, 125 Wash.2d 150, 154, 882 P.2d 183 (1994)).
[58] State v. Fjermestad, 114 Wash.2d 828, 835, 791 P.2d 897 (1990).
[59] Myers, 133 Wash.2d at 33, 941 P.2d 1102.
[60] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1223 (1969).
[61] BLACK'S LAW DICTIONARY 1205 (6th ed.1990).
[62] BLACK'S LAW DICTIONARY 850, 1222 (7th ed.1999).
[63] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1223 (3rd ed.1971).
[64] BLACK'S LAW DICTIONARY 846 (6th ed.1990).
[65] Id. at 1205.
[66] Br. of Resp't at 18-19.
[67] Br. of Pet'r at 19-23. Petitioner cited several cases in support of its position that "judicial process" should be defined broadly. None of those cases are on point. Br. of Pet'r at 21-22.
[68] State v. Joos, 735 S.W.2d 776 (Mo.Ct.App. 1987).
[69] Joos, 735 S.W.2d at 777-78.
[70] Id. at 778.
[71] Id. at 779.
[72] State v. Groom, 133 Wash.2d 679, 691, 947 P.2d 240 (1997) (citing State v. Thorne, 129 Wash.2d 736, 769-70, 921 P.2d 514 (1996); State v. Myles, 127 Wash.2d 807, 812, 903 P.2d 979 (1995)); State v. Halstien, 122 Wash.2d 109, 118, 857 P.2d 270 (1993).
[73] Respondent has not engaged in an analysis of State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), necessary for determining whether the due process clause in the Washington Constitution, art. I, § 3 provides greater protection than the United States Constitution, amendment 14, § 1. Accordingly, we will only consider his due process claim under federal constitutional law. City of Spokane v. Douglass, 115 Wash.2d 171, 176-77, 795 P.2d 693 (1990).
[74] In Respondent's answer to Petitioner's motion for discretionary review, he challenges RCW 9.12.010 as unconstitutionally "overbroad" and "void for vagueness" on its face and as applied to his conduct in this matter. However, in subsequent briefing, he argues alternatively that if this court finds Petitioner's "broad" definition of "judicial process" applicable to RCW 9.12.010, the statute would then be rendered unconstitutionally overbroad, in addition to being void for vagueness on its face and as applied under the Fourteenth Amendment to the United States Constitution. "Answer to Statement of Grounds for Direct Review," at 2, 5-6; Br. of Resp't at 20-34. Because we conclude Petitioner's "broad" definition of "judicial process" is not applicable to the barratry statute, we do not address the overbreadth doctrine in this opinion.
[75] Br. of Pet'r at 16-17.
[76] Id. (citing United States v. Reeves, 752 F.2d 995 (5th Cir.), cert. denied, 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985) (A First Amendment right to petition did not protect a citizen, who filed a common law lien against the residence of an Internal Revenue Service investigator, from being convicted of corruptly endeavoring to obstruct or impede the due administration of the IRS Code), appeal after remand, United States v. Reeves, 782 F.2d 1323, 1325-26, (5th Cir.), cert. denied, 479 U.S. 837, 107 S.Ct. 136, 93 L.Ed.2d 79 (1986)).
[77] City of Seattle v. Montana, 129 Wash.2d 583, 596, 919 P.2d 1218 (1996); Douglass, 115 Wash.2d at 178, 795 P.2d 693 (citing Rose v. Locke, 423 U.S. 48, 49, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975)).
[78] State v. Crediford, 130 Wash.2d 747, 766, 927 P.2d 1129 (1996) (Sanders, J., concurring).
[79] In re Contested Election of Schoessler, 140 Wash.2d 368, 388, 998 P.2d 818 (2000) (quoting Haley v. Med. Disciplinary Bd., 117 Wash.2d 720, 739-40, 818 P.2d 1062 (1991)).
[80] Douglass, 115 Wash.2d at 178, 795 P.2d 693 (citing Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); State v. Motherwell, 114 Wash.2d 353, 369, 788 P.2d 1066 (1990)).
[81] Halstien, 122 Wash.2d at 117-18, 857 P.2d 270 (citing Douglass, 115 Wash.2d at 178, 795 P.2d 693).
[82] Douglass, 115 Wash.2d at 179, 795 P.2d 693 (quoting Burien Bark Supply v. King County, 106 Wash.2d 868, 871, 725 P.2d 994 (1986)).
[83] Id. at 179, 795 P.2d 693.
[84] Haley v. Med. Disciplinary Bd., 117 Wash.2d at 740, 818 P.2d 1062.
[85] Id. (quoting Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)).
[86] Douglass, 115 Wash.2d at 181, 795 P.2d 693 (quoting State v. Worrell, 111 Wash.2d 537, 544, 761 P.2d 56 (1988)); Myles, 127 Wash.2d at 812, 903 P.2d 979.
[87] Douglass, 115 Wash.2d at 181, 795 P.2d 693 (quoting State v. Maciolek, 101 Wash.2d 259, 267, 676 P.2d 996 (1984)).
[88] Weden v. San Juan County, 135 Wash.2d 678, 708, 958 P.2d 273 (1998); Douglass, 115 Wash.2d at 181-82, 795 P.2d 693.
[89] Weden, 135 Wash.2d at 708, 958 P.2d 273 (quoting Douglass, 115 Wash.2d at 182 n. 7, 795 P.2d 693).
[90] Groom, 133 Wash.2d at 691, 947 P.2d 240; Halstien, 122 Wash.2d at 117, 857 P.2d 270; Douglass, 115 Wash.2d at 181-83, 795 P.2d 693.
[91] Br. of Resp't at 24.
[92] The First Amendment to the United States Constitution provides:

FREEDOM OF RELIGION, OF SPEECH, AND OF THE PRESS. Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of people peaceably to assemble, and to petition the government for a redress of grievances.
[93] Article I, section 5 of the Washington State Constitution provides:

FREEDOM OF SPEECH. Every person may freely speak, write and publish on all subjects, being responsible for the abuse of that right.
[94] Br. of Resp't at 24.
[95] Halstien, 122 Wash.2d at 117, 857 P.2d 270.
[96] Br. of Resp't at 28-29.
[97] Id.
[98] See Douglass, 115 Wash.2d at 179, 795 P.2d 693; City of Seattle v. Eze, 111 Wash.2d 22, 27, 759 P.2d 366 (1988).
[99] Douglass, 115 Wash.2d at 179, 795 P.2d 693.
[100] Schoessler, 140 Wash.2d at 389, 998 P.2d 818 (alteration in original) (quoting Eze, 111 Wash.2d at 27, 759 P.2d 366).
[101] See Myles, 127 Wash.2d at 812-13, 903 P.2d 979.
[102] Douglass, 115 Wash.2d at 180, 795 P.2d 693 (citing City of Seattle v. Huff, 111 Wash.2d 923, 929, 767 P.2d 572 (1989)).
[103] Id. at 180, 795 P.2d 693.
[*] Justice Philip Talmadge is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend.38).
[1] RCW 9.12.010 states:

Every person who brings on his or her own behalf, or instigates, incites, or encourages another to bring, any false suit at law or in equity in any court of this state, with intent thereby to distress or harass a defendant in the suit, or who serves or sends any paper or document purporting to be or resembling a judicial process, that is not in fact a judicial process, is guilty of a misdemeanor; and in case the person offending is an attorney, he or she may, in addition thereto be disbarred from practicing law within this state.
[2] The Legislature is, of course, free to amend RCW 9.12.010 to punish the filing of any sham or false legal pleading.