Honorable Pam Roach Senator, District 31 PO Box 40431 Olympia, WA 98504-0431
Dear Senator Roach:
By letter previously acknowledged, you have requested our opinion on a question we have summarized and paraphrased as follows:
 Can law enforcement agencies use state asset forfeiture funds[1] for accreditation and/or reaccreditation fees and for the training that such accreditation requires?
 BRIEF ANSWER
Law enforcement agencies can use state asset forfeiture funds obtained under RCW 10.105.010 for accreditation, reaccreditation, and necessary associated training which serves to improve law enforcement activity, provided that such funding does not supplant existing funding sources. However, any accreditation, reaccreditation, or necessary associated training that does not serve to improve or expand law enforcement activity would not be eligible for funding under RCW 10.105.010. Furthermore, state asset forfeiture funds obtained by a law enforcement [original page2] agency under RCW 69.50.505 (governing forfeitures related to controlled substances), RCW 9A.83.030 (governing forfeitures associated with money laundering), and RCW 9.46.231 (governing forfeitures associated with gambling laws) cannot be used to fund accreditation or reaccreditation. Such proceeds would likewise be unavailable for training required for accreditation unless (a) there is a close connection between a given training and enforcing controlled substances laws for purposes of RCW 69.50.505 and RCW 9A.83.030, or gambling laws for purposes of RCW 9.46.231; and (b) the funding would not supplant existing funding sources.
 BACKGROUND
Your letter explains accreditation and associated training as follows:
 Many police departments are accredited through the Commission on Accreditation for Law Enforcement Agencies (CALEA), [2] the Washington Association of Sheriffs and Police Chiefs (WASPC)[3] and/or other organizations. The process to receive accreditation usually consists of an intensive review of policies and procedures, inspection of the department and facilities, interviewing staff and public officials, and holding public hearings to take comment.
 The fees associated with accreditation and reaccreditation cover technical materials and training publications; assistance from staff of the credentialing agency to guide departments in the development and implementation of policies and procedures; on-site assessments; software designed to support department self-assessment; and registration for meetings where department personnel receive training on state-of-the-art law enforcement practices.
 ANALYSIS
Your question relates to several different forfeiture statutes which allow law enforcement agencies to forfeit property connected with certain criminal activity and to retain some net proceeds of forfeited property for particular purposes.[4] With certain exceptions identified in [original page 3]
RCW 10.105.900, RCW 10.105 governs forfeiture of property involved in felonies. One main exception is for property associated with violations of controlled substances laws, which is governed by RCW 65.50.505. Other exceptions include property associated with money laundering as described in RCW 9A.83.030(6), and property associated with violations of gambling laws as described in RCW 9.46.231. These statutes are addressed in turn below.
 We first address forfeiture funds under RCW 10.105. RCW 10.105.010 provides in relevant part:
 [N]et proceeds[5] not required to be paid to the state treasurer, or otherwise required to be spent under [RCW 10.105.010], shall be retained by the seizing law enforcement agency exclusively for the expansion and improvement of law enforcement activity. Money retained under this section may not be used to supplant preexisting funding sources.
RCW 10.105.010(c) (emphasis added; footnote added).
In considering your question, we are guided by the plain language of the statute itself. When a statute is unambiguous, its meaning must be derived from the plain language of the statute alone.State v. Sullivan, 143 Wn.2d 162, 175, 19 P.3d 1012 (2001). When the legislature has not defined statutory terms, and where no contrary intent is evident in the statute, statutory terms are given their common and ordinary meaning. American Legion Post32 v. City of Walla Walla, 116 Wn.2d 1, 8, 802 P.2d 784 (1991). Dictionaries can be used to help determine such meaning.Id. at 8. As explained above, net proceeds retained by the seizing law enforcement agency pursuant to RCW 10.105 can only be used for the expansion and improvement of law enforcement activity. The dictionary defines "expansion," in relevant part, as "the act or process of increasing the extent, size, number, volume, or scope."Webster's Third New International Dictionary 798 (2002). "Improvement" is defined, in relevant part, as the "enhancement or augmentation of value or quality." Webster's at 1138.
We conclude that accreditation and reaccreditation, such as that offered by CALEA and WASPC, and necessary associated training, falls squarely within the purpose of improving law [originalpage 4] enforcement activity.[6] This is because the purpose of such accreditation is typically to enhance or augment the value or quality of law enforcement. We do not, however, mean to suggest that all accreditation, reaccreditation, and necessary associated training programs can be funded under RCW 10.105.010 without limitation. First, to be funded out of proceeds retained by a seizing law enforcement agency under RCW 10.105.010(7), any accreditation, reaccreditation, or associated training would have to expand or improve law enforcement activity. Whether a particular program satisfies this requirement would have to be evaluated on an individual basis. Additionally, this funding cannot supplant preexisting funding sources. RCW 10.105.010(7)(c).
Although your inquiry does not specify to the nature of the criminal activity that gives rise to the forfeited property, the legislature has put more specific constraints on certain kinds of state asset forfeiture funds. As noted above, RCW 10.105 does not apply to property forfeited under these statutes. See
RCW 10.105.900. The statutes include RCW 69.50.505, relating property associated with violations of controlled substances laws. It states:
 [N]et proceeds not required to be paid to the state treasurer shall be retained by the seizing law enforcement agency exclusively for the expansionand improvement of controlled substances related law enforcement activity. Money retained under this section may not be used to supplant preexisting funding sources.
RCW 69.50.505(10) (emphasis added). Disposition of forfeited property under RCW 9A.83.030, which addresses property associated with money laundering, is also governed by RCW 69.50.505(10), and thus the same restrictions apply. See RCW 9A.83.030(6). And finally, funds from forfeiture of property associated with gambling activity are subject to a scheme similar to controlled substance forfeitures, whereby:
 The seizing law enforcement agency shall retain . . . net proceeds exclusively for the expansionand improvement of gambling-related law enforcement activity. Money retained under this section may not be used to supplant preexisting funding sources.
RCW 9.46.231(8) (emphasis added).
In AGO 1995 No. 11, we opined that RCW 69.50.505 does not restrict the use of drug forfeiture proceeds to law enforcement activities that are related exclusively to controlled [original page5] substances. [7] AGO 1995 No. 11, at 1-2. Rather, reviewing the plain language of the statute and ordinary definitions of the terms, we concluded that the language now found in RCW 69.50.505(10) authorizes use of drug forfeiture proceeds for law enforcement activities having a "close connection" to enforcing controlled substances laws. AGO 1995 No. 11, at 3. Further, we explained that these funds would not be available for "general law enforcement activities having no significant relationship to enforcing controlled substances laws." AGO1995 No. 11, at 3.
We do not discern the existence of a "close connection" between enforcement of controlled substances or gambling laws and accreditation by organizations like CALEA and WASPC. Instead, accreditation by such organizations falls into the category of improving general law enforcement activities which may be beneficial to overall law enforcement objectives. Thus, net proceeds from forfeitures retained by seizing agencies under RCW 69.50.505, RCW 9A.83.030, and RCW 9.46.231 are not available for funding general accreditation and reaccreditation through organizations like CALEA and WASPC. Such proceeds would likewise be unavailable for training required for accreditation unless (a) there is a close connection between a given training and enforcing controlled substances laws [8] for purposes of RCW 69.50.505 and RCW 9A.83.030, or gambling laws for purposes of RCW 9.46.231; and (b) the funding would not supplant existing funding sources.
Finally, this opinion should not be read as an endorsement of any particular accreditation organization. Each accreditation program should be individually evaluated by the law enforcement agency considering devoting resources to accreditation.
We trust that the foregoing will be useful to you.
ROB MCKENNA Attorney General
MELISSA P. ROURKE Assistant Attorney General
[1] For the purposes of this opinion, we define "state asset forfeiture funds" to be those net proceeds lawfully retained by a seizing law enforcement agency through forfeiture. Notably, "net proceeds" is defined slightly differently under some of the different applicable statutes, as explained in footnote 5 below.
[2] CALEA explains that its accreditation standards address the following major law enforcement subjects: role, responsibilities, and relationships; organization, management and administration; personnel structure; personnel process; operations; operation support; traffic operations; detainee and court-related activities; and auxiliary and technical services. http://www.calea.org/online/CALEAPrograms/LawEnforcement/lawenf standards.htm (last visited Dec. 17, 2009).
[3] According to WASPC, the proven benefits of its accreditation program include, among other benefits: improved morale within the police agency; increased credibility with the governing body; systemized self-assessment; and intensified administrative and operational effectiveness. http://www.waspc.org/index.php?c =Accreditation (last visited Dec. 17, 2009).
[4] There are many other statutes that address forfeiture of property, such as: RCW 66.32 (contraband liquor); RCW 9.41.098 (firearms); RCW 9A.82.100 (criminal profiteering, trafficking, and leading organized crime); RCW 7.48.090 (moral nuisance); and RCW 77.15.070 (Fish and Wildlife enforcement code). However, these statutes do not explicitly authorize the seizing law enforcement agency to directly retain state asset forfeiture funds and, therefore, do not give rise to the question you pose.
[5] Under RCW 10.105.010 and RCW 9.46.231, "net proceeds" is defined as "the value of the forfeitable interest in the property after deducting the cost of satisfying any bona fide security interest to which the property is subject at the time of seizure; and in the case of sold property, after deducting the cost of sale, including reasonable fees or commissions paid to independent selling agents." RCW 10.105.010(7)(a); RCW 9.46.231(7)(a). Under RCW 69.50.505, "net proceeds" includes that same definition, and additionally, in the case of sold property, calls for "the cost of any valid landlord's claim for damages under subsection (15) of this section" to be deducted. RCW 69.50.505(9)(b).
[6] This reading of the uses of net proceeds under RCW 10.105.010 is also consistent with the broad approval for uses of forfeited property under RCW 10.105.010. After satisfying any court-ordered victim restitution, the seizing law enforcement agency may: retain it "for official use"; "upon application by any law enforcement agency of this state release such property to such agency for the exclusive use of enforcing the criminal law"; or "sell that which is not required to be destroyed by law and which is not harmful to the public." RCW 10.105.010(6)(a), (b).
[7] While the statute has been amended since 1995 and the provisions have been reorganized, the applicable language remains the same. The language we referred to in AGO1995 No. 11 as RCW 69.50.505(i) is presently found in RCW 60.50.505(10).
[8] For example, a general accreditation program which could not be funded under RCW 69.50.505 might require training on controlled substances which could be eligible for funding.